UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

In re:                                                             Bankruptcy No. 03-35883
Bruce E. Kiernat,

        Debtor.

---

St. Paul Academy and Summit School,
the Alice French Trust, and the Richard
French Trust,

        Plaintiffs/Appellants,

                                                          **MEMORANDUM OPINION**
     v.                                               **AND ORDER**
                                                            Civil No. 05-2127 ADM

Bruce E. Kiernat,

        Defendant/Appellee.                           Adv. Pro. No. 03-3356

---

Thomas J. Flynn, Esq., Larkin, Hoffman, Daly & Lindgren Ltd., Minneapolis, MN, on behalf of Plaintiffs.

Bruce E. Kiernat, *pro se*.

Ann K. Bloodhart, Esq., Assistant Attorney General, St. Paul, MN, on behalf of *amicus curiae* State of Minnesota.

---

## I. INTRODUCTION

This matter is before the undersigned United States District Judge on Plaintiffs St. Paul Academy and Summit School ("SPA"), the Alice French Trust, and the Richard French Trust's ("Plaintiffs") Appeal [Docket No. 1] of an Order issued by the Honorable Dennis D. O'Brien, United States Bankruptcy Judge for the District of Minnesota, on July 26, 2005.[1] Defendant

---

[1] The Minnesota Attorney General submitted an *amicus* brief discussing charitable trusts. Kiernat objects on procedural grounds to the Attorney General's brief, raising the issue of whether Rule 29 of the Federal Rules of Appellate Procedure is applicable to this case. The

Bruce E. Kiernat ("Kiernat") has filed a Cross Appeal [Docket No. 1]. For the reasons set forth below, Plaintiffs' Appeal is granted in part and denied in part, and Defendant's Cross Appeal is granted.

## II. BACKGROUND

In 1990 and 1993, respectively, Alice and Richard French set up trusts entitled the "Alice S. French Trust" and the "Richard S. French Trust."[2] Pls Appendix ("App.") [Docket No. 3] at 28, 36. Alice French died on January 28, 1998, at which time the assets of the Alice S. French Trust were transferred to the Richard S. French Trust. Richard French died on April 10, 1999. The Trust provided for the following distribution of trust assets upon Richard French's death:

> 4. On my death:
>
> 4.1 The Trustees shall pay my valid debts, the expenses of my probate and nonprobate estate and all taxes which become due because of my death, without apportionment or claim of contribution against any person on account thereof.
>
> 4.2 The Trustees shall distribute $50,000 to Susan Michelle Larson if she survives me.
>
> 4.3 The Trustees shall distribute the assets of the trust which are not disposed of by the preceding provisions to St. Paul Academy/Summit School to hold and administer as an endowment fund, which shall be known as The French Family Endowment Fund, the income from which shall be used for such purposes as its governing board of trustees determines.

App. at 38. The Trust granted certain powers to the trustees, including the following:

---

Court recognizes that this is an appeal from the Bankruptcy Court, but also notes the Federal Rules of Appellate Procedure traditionally apply to the circuit courts of appeal. The Court will exercise its discretion to consider the brief. The *amicus* brief raises no additional arguments not addressed in the briefs of the parties.

[2] As the focus of this litigation is the Richard S. French Trust, it will be simply referred to as "the Trust."

> 5. The following provisions shall govern the Trustees and the administration of the trust.
>
>> 5.1 . . . [T]he trustees are expressly empowered:
>>
>>> 5.1(2) To abandon, adjust, compromise, sue on, defend against or otherwise deal with and settle any claim in favor of or against the trust on such terms as the Trustees deem advisable.

App. at 38-39. Finally, the Trust states:

> 5.2 The powers conferred upon the Trustees are absolute and may be exercised by the Trustees without the order, license or confirmation of any court and without the consent of any beneficiary . . . .

App. at 40. At all relevant times, the sole trustee of the Trust has been Bruce Kiernat, an attorney.

Shortly after the death of Richard French, Kiernat undertook litigation on behalf of the Trust against U.S. Bank. The litigation sought reimbursement for damages allegedly sustained by the Trust. The litigation proved unsuccessful, and the Trust expended approximately $1,000,000 in fees. July 26, 2005 Bankruptcy Court Order ("Order") (Defendant's Addendum [Docket No. 6]) at 7-8. Kiernat claims that prior to his death, Richard French asked Kiernat to commence the litigation on behalf of the Trust. Id. at 3. This conversation was uncorroborated by evidence other than Kiernat's own testimony. Before the Bankruptcy Court, conflicting testimony was given as to whether Kiernat kept SPA informed of the litigation, whether SPA approved of the litigation, and whether Kiernat timely responded to accounting requests regarding the litigation. The Bankruptcy Court ultimately found that:

> The issue regarding lack of information was not lack of timely, reasonable, information about the litigation and the financial state of the Trust. It was about the lack of information sufficient to enable SPA to make, approve, or veto decisions that were properly within the authority and discretion of the defendant. Defendant had no duty to let SPA take over administration of the Richard French Trust. Contrary, defendant's duty

3

>    to his client, the Trust, was to administer it according to the settlor's wishes and to protect the trust as he in good faith thought necessary and appropriate. His reliance on the advice and counsel of his retained professionals, and not the dictates of SPA the beneficiary, was not the breach of any duty . . . .

Id. at 25.

In November 2003, Kiernat pled guilty to one count of mail fraud for actions in connection with his duties as trustee. United States v. Kiernat, 03-CR-364, Docket No. 6 (D. Minn. 2003). Kiernat admitted he had fraudulently overbilled the Trust in the amount of $53,000. Kiernat was sentenced to six months in prison, and was also ordered to pay $53,000 in restitution, as well as a fine of $25,000.[3] Id. at Docket No. 14. Kiernat also agreed to his disbarment from the practice of law. Id. at Docket No. 6.

Plaintiffs raise three issues on appeal. First, Plaintiffs argue that because Kiernat breached his fiduciary duty to Plaintiffs, he is under a duty to not only repay the stolen funds, but also to disgorge and forfeit any compensation, fees, or expenses he received from the Trust. Plaintiffs further aver this obligation is a non-dischargeable debt under § 523 of the Bankruptcy Code. Next, Plaintiffs contend that upon the death of Richard French, Kiernat had a duty to wind down the trust and distribute the trust funds to SPA rather than to engage in litigation. Finally, Plaintiffs claim the Bankruptcy Court erred in its conclusion that Plaintiffs did not prove defalcation with regard to the funds of the Trust. In his cross appeal, Kiernat alleges that the Bankruptcy Court erred in ordering him to pay $53,000 to the Trust, claiming that this responsibility was previously fulfilled when he paid restitution in the criminal action.

### III. DISCUSSION

---

[3] Although the plea agreement states that Kiernat agreed to pay $58,800 in "full criminal restitution," the judgment in the criminal case sets the restitution amount at $53,000.

The standard of review in a bankruptcy appeal differs for questions of law and questions of fact. Questions of law are reviewed *de novo*, while findings of fact are reviewed on a clearly erroneous standard. In re Muncreif, 900 F.2d 1220, 1224 (8th Cir. 1990).

**A.     Disgorgement of Fees**

The first issue appealed by Plaintiffs is whether Kiernat is under a duty to disgorge the entire compensation he received from the Trust due to the breach of fiduciary duty incurred when he overbilled the Trust. Kiernat, in his role as trustee of the Trust, was a fiduciary. A fiduciary duty existed not only to the Trust and grantor, but also to the beneficiaries of the Trust. See Minn. Stat. § 501B.60, subd. 1 ("A trust must be administered with due regard to the respective interests of income beneficiaries and remainderpersons"). Moreover, a trustee's fiduciary duty requires him to disclose all facts relating to the trust. See Central States, Southeast and Southwest Area Pension Fund v. Central Transp., Inc., 472 U.S. 559 (1985); Northwest Bank MN v. Beckler, 663 N.W.2d 571 (Minn. Ct. App. 1997). Fiduciaries, of course, are required to deal "openly, honestly and fairly" with those to whom they owe a fiduciary duty. See Pedro v. Pedro, 498 N.W.2d 798, 801 (Minn. Ct. App. 1992).

Under Minnesota law, a violation of fiduciary duty can result in the forfeiture of compensation otherwise due to the fiduciary. Bolander v. Bolander, 2005 WL 1869475, at *17 (Minn. Ct. App. Aug. 9, 2005). Further, when a fiduciary engages in "actual fraud or bad faith towards the trust or its beneficiaries in the matter of his employment, he is not entitled to any pay for his services." Gilchrist v. Perl, 387 N.W.2d 412, 414 (Minn. 1986). Additionally, the Minnesota Supreme Court has held that "an attorney (or any fiduciary) who breaches his duty to his client, forfeits his right to compensation." Rice v. Perl, 320 N.W.2d 407, 411 (Minn. 1982).

The Court explained in Rice: "The underlying policy is a strong one.  It recognizes that ensuring absolute fidelity to the principal's (or beneficiary's) interests is fundamental to establishing the trust necessary to the proper functioning of these relationships." Id. at 411.  Finally, Plaintiffs further aver that under bankruptcy law, if one can demonstrate that monies were "obtained by fraud, any debt arising therefrom is excepted from discharge." Cohen v. de la Cruz, 523 U.S. 213, 218-19 (1998).

Under this framework, Plaintiffs contend that because Kiernat fraudulently appropriated funds from the Trust to himself in the form of overbilling, he forfeited his right to collect any compensation from his work for the Trust.  The Bankruptcy Court found that Kiernat's double billing, the filing of a false verified accounting, and his plea agreement evidenced conduct that produced a non-dischargeable debt under 11 U.S.C. §§ 523(a)(4) and (a)(6).  Order at 10-11.  The Bankruptcy Court noted that Kiernat had previously been ordered to pay restitution, and was also fined $25,000, both of which have been paid.[4]  Id.  In its analysis, the Bankruptcy Court cited Cohen, but only applied Cohen to those fees specifically claimed to be fraudulently obtained as a result of overbilling, rather than all the fees Kiernat charged for his work as trustee.

The Bankruptcy Court's narrow interpretation of Cohen is incorrect.  11 U.S.C. § 523(a)(2)(A) states an individual debtor may not be: "discharge[d] . . . from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud . . . ." Cohen held that treble damages awarded as a result of monies fraudulently obtained constitute part of the "debt."

---

[4] As will be addressed in Kiernat's Cross Appeal, the Bankruptcy Court found that in addition to the restitution and fine, Kiernat owed an additional $53,000 to SPA.

6

523 U.S. at 218. "Once it is established that specific money or property has been obtained by fraud, however, 'any debt' arising therefrom is excepted from discharge." Id. Therefore, if, by operation of state law, Kiernat has forfeited his entire compensation earned from his work for the Trust by his criminal fraud, those monies constitute a non-dischargeable debt.

In the instant case, Minnesota law dictates that because Kiernat fraudulently obtained fees, all of his compensation must be forfeited. Rice, 320 N.W.2d at 411. As recognized in In re Estate of Lee:

> It is equally well settled that an attorney at law who is unfaithful in the performance of his duties forfeits his right to compensation. An attorney is an officer of the court, sworn to aid in the administration of justice and to act with strict fidelity to both his clients and the courts. Unquestioned fidelity to their real interests is the duty of every attorney to his clients. When a breach of faith occurs, the attorney's right to compensation is gone.

9 N.W.2d 245, 251 (Minn. 1943).

Although Rice involved the actions of an attorney, it specifically noted that "any fiduciary" who "breaches his duty to his client forfeits his right to compensation." Id. The Minnesota Supreme Court made clear how forcefully this rule was to be enforced, holding:

> Defendants correctly note that these cases all involved overtly wrongful conduct. Yet, the law has traditionally been unyielding in its assessment of penalties when a fiduciary, or trustee, or agent has breached any of his obligations. The underlying policy is a strong one. It recognizes that insuring absolute fidelity to the principal's (or beneficiary's) interests is fundamental to establishing the trust necessary to the proper functioning of these relationships.

Id. Minnesota law is clear that the penalty for the breach of fiduciary duty is the loss of the right to any compensation based on that duty. As a result, all of Kiernat's fees must be forfeited. Under Cohen, this penalty is non-dischargeable. Thus, Kiernat is liable to Plaintiffs for the total compensation he received in fees in his role as trustee.

Kiernat's admitted criminal fraudulent conduct in his role as a trustee creates an

inexorable taint to all fees he received as compensation for his work performed on the Trust. Where there is willful criminal fraud, no analysis is necessary to segregate what fees may have been legitimately earned. The harder case is one where there may be churning of the file or poor decision making, but the line of criminal conduct is not crossed. This is not such a case.

Further bolstering the rationale for treating the debt as non-dischargeable is the fact that the Trust is, under Minnesota law, a charitable trust, defined as "a fiduciary relationship with respect to property that arises as a result of a manifestation of an intention to create it, and that subjects the person by whom the property is held to equitable duties to deal with the property for a charitable purpose . . . . property includes all income derived from fees for services." Minn. Stat. § 501B.35, subd. 3.[5] Charitable trusts are subject to additional regulations. For example, "the failure of a trustee . . . to administer and manage property held for charitable purposes in accordance with law or consistent with fiduciary obligations constitutes a breach of trust." Minn. Stat. § 501B.41, subd. 6. Furthermore, if a trustee has a higher level of skill as a result of his status as an attorney, he takes on a higher duty of care in carrying out his duties as trustee. In re Trusteeship of Williams, 591 N.W.2d 743, 748 (Minn. Ct. App. 1999). Kiernat's additional responsibilities as trustee of a charitable trust impose further requirements upon him that were not met. For the foregoing reasons, Kiernat is ordered to disgorge, as a non-dischargeable debt, any fees he received as trustee of the Trust.

**B.     Duty to Wind Down Trust**

---

[5] Kiernat argues that because the Trust was not created before April 15, 1927, it does not qualify under Minn. Stat. § 501B.31, subd. 4(a) as a charitable trust. However, that particular section of the Minnesota Statutes does not define charitable trusts. Rather, it merely sets forth reporting requirements for certain charitable trusts.

Because the first issue is dispositive of Plaintiffs' appeal, the Court need not reach the remaining issues. However, they will be briefly discussed. The second issue centers on the alleged duty of Kiernat to immediately wind down the Trust and distribute its assets upon the death of Richard French. After Richard French died, Kiernat continued lengthy and expensive litigation prior to distributing the assets of the Trust. Plaintiffs claim that upon the death of Richard French, all duties of the trustee became subordinate to § 4 of the Trust, which specified how the Trust should be distributed upon Richard French's death. Plaintiffs contend that Kiernat's pursuit of additional litigation on behalf of the Trust violated the Trust itself. The Bankruptcy Court found that after Richard French's death, all Trust provisions remained in equal effect, and because Kiernat had specific authority to continue the litigation, he did not violate any terms of the Trust. Plaintiffs aver this finding was in error.

Plaintiff has not presented convincing authority for the proposition that upon the death of the grantor, all provisions of a charitable trust become subordinate to a distribution clause. Plaintiffs do not identify any language on the face of the Trust that indicates that § 4, the section delineating how the Trust funds are to be distributed, takes precedence over § 5, which gives the trustee authority to conduct litigation on behalf of the Trust. Section 5.2 further states that the trustee need not obtain permission of a beneficiary to act on behalf of the Trust. Plaintiffs contend that if the Court finds that the trustee retains unfettered discretion to continue litigation under § 5, the trustee would have the option of engaging in permanent litigation, and would never be required to distribute the assets of the Trust. This argument, however, ignores the fact that the trustee is still bound by his fiduciary duty. Thus, to the extent that litigation carried on by a trustee is not carried out in good faith, he will be responsible for those actions. Gilchrist,

387 N.W.2d at 414.

Here, Plaintiffs aver that Kiernat's failure to keep them informed of the status of the litigation, as well as his failure to end the litigation when requested, constitute a breach of Kiernat's fiduciary duty.  The Bankruptcy Court was satisfied that SPA personnel had been informed of the litigation, supported it, were kept informed on the litigation, and were updated on the status of the Trust.  Order at 22-23.  Plaintiffs have not proffered sufficient evidence to demonstrate that this holding was clearly erroneous.  Although Plaintiffs may not have had the control they desired over the litigation, they have not presented legal or factual authority to demonstrate that the Bankruptcy Court was in error.

**C.     Alleged Defalcation**

Finally, Plaintiffs allege the Bankruptcy Court erred in concluding that Plaintiffs had failed to prove defalcation with regard to the Trust funds.  In this regard, Plaintiffs allege the Bankruptcy Court made numerous errors in assessing the facts regarding defalcation, including allegations of backdating invoices and checks, deceptive interim accounting, fee payments made after SPA's motion to remove Kiernat as trustee, and excessive fees.  Although Plaintiffs reiterate the evidence presented to the Bankruptcy Court, they do not explain how the Bankruptcy Court's findings were clearly erroneous.  Thus, this ground for appeal is rejected.

**D.     Cross Appeal**

In his Cross Appeal, Kiernat alleges that the Bankruptcy Court erred in finding that Kiernat still owed $53,000 to SPA as a result of overbilling.  Kiernat does not dispute the finding that he overbilled the Alice French Trust in that amount; rather, he contends that he has fully reimbursed the Trust for this amount as part of the amount he paid in criminal restitution and fine

as a result of the criminal judgment.  The Bankruptcy Court, noting this fact, held: "The court ordered restitution and the penalty have been paid.  Although defendant testified that he reduced a later bill by $53,000 to offset the double billing error, that testimony is inconsistent with his admissions in the plea agreement and is not memorialized in his billing statements prepared after he discovered the error."  Order at 11.  The criminal judgment indicated that Kiernat had fulfilled his duty to pay restitution.  Thus, the Bankruptcy Court erred in requiring Kiernat to pay an additional $53,000 to Plaintiffs.  Kiernat's Cross Appeal is granted.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Plaintiffs' Appeal [Docket No. 1] is **GRANTED** in part and **DENIED** in part;

2.  Defendant's Cross Appeal [Docket No. 1] is **GRANTED**;

3.  The Bankruptcy Court's Order of July 26, 2005 is **AFFIRMED** in part and **REVERSED** in part; and

4.  The case is **REMANDED** to the Bankruptcy Court for entry of judgment consistent with this Order.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  January 6, 2006.